FLAMBEAU PRODUCTS CORPORATION,
a Wisconsin corporation, Plaintiff-Respondent,

V.

HONEYWELL INFORMATION SYSTEMS, INC.,
a foreign corporation, Defendant-Appellant.†

Court of Appeals

*No. 82–307. Submitted on briefs November 15, 1982.—
Decided January 18, 1983.*
(Also reported in 330 N.W.2d 228.)

---

† Petition to review granted. CECI, J., took no part.

318

For the appellant the cause was submitted on the briefs of *J. Leroy Thilly, Barbara L. Block, James E. Bartzen* and *Boardman, Suhr, Curry & Field* of Madison.

For the respondent the cause was submitted on the brief of *Clyde C. Cross, Karen A. Mercer* and *Cross, Mercer and Maffei* of Baraboo.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   Honeywell Information Systems, Inc., appeals from an order for an interlocutory judgment[1] extinguishing Flambeau Products Corporation's obligations under installment purchase contracts and dismissing Honeywell's counterclaim for the unpaid portion of the purchase price, plus accrued interest.   Honeywell contends that the trial court erroneously held that Honeywell's retention of proceeds from Flambeau's check marked as payment in full constituted an accord and satisfaction.   Honeywell also asserts that an accord and satisfaction did not occur because under sec. 401.207, Stats., it reserved its right to full performance of Flambeau's contractual obligations.   Because we conclude that an accord and satisfaction was not effected since Honeywell reserved its rights under sec. 401.207, we reverse and remand.

Flambeau contracted to purchase computer equipment and key tapes from Honeywell's Wisconsin office.   The purchase contracts provided that Flambeau was to pay the purchase price in monthly installments.   Honeywell

[1] Honeywell filed a petition for leave to appeal the non-final order pursuant to § 808.03(2) and § 809.50, Stats., which was granted.

granted Flambeau the option to prepay its obligations under the contract at any time and established a $14,000 credit for computer programming services that Flambeau could use until October 1, 1976. Flambeau utilized part of this credit prior to its expiration.

Flambeau requested a prepayment quotation from Honeywell for payment as of January 31, 1977. Honeywell quoted $109,412 as the amount of principal and accrued interest due, which Flambeau did not dispute. After receiving this quotation, Flambeau sent a check for $95,412 and a letter addressed to Honeywell to a post office box in Chicago, Illinois, which was a lock box Honeywell had established with the Northern Trust Company. The check was marked as payment in full of Flambeau's obligations under the purchase contracts. The accompanying letter also stated that the check was in full settlement of Flambeau's contractual obligations, and it indicated that a $14,000 deduction for unused programming had been taken from the figure Honeywell had quoted. Although Northern Trust was not authorized to cash checks bearing qualifying notations, it cashed Flambeau's check and deposited the proceeds in Honeywell's account on February 4, 1977.

Honeywell's Wisconsin office did not learn that the check had been tendered and cashed and that Flambeau had sent an accompanying letter until March 11, 1977. On the next business day, Honeywell's Wisconsin office notified Flambeau via letter that the check did not constitute full payment of Flambeau's contractual obligations and that Honeywell did not accept it as such. Honeywell also requested that Flambeau remit the remaining balance plus accrued interest. Honeywell did not return any of the proceeds from the cashed check to Flambeau.

Flambeau sought a declaratory judgment against Honeywell to the effect that Flambeau had no additional obligations to Honeywell and that Honeywell had no se-

curity interest in Flambeau's computer equipment. The trial court initially held that Honeywell's retention of the check proceeds constituted an accord and satisfaction, which it could not avoid by a reservation of rights under sec. 401.207, and granted summary judgment to Flambeau. This court reversed the trial court's decision because the record revealed no evidence of a disputed or unliquidated claim between the parties at the time Flambeau sent its check to the lock box at Northern Trust. We therefore held that based on the limited record before us, Flambeau could not claim an accord and satisfaction by virtue of its partial payment of an undisputed debt, and the matter was remanded for trial.

After trial, the trial court found that there was no dispute concerning the amount Flambeau owed to Honeywell prior to the time Flambeau sent the check and letter in which it had claimed an offset. The court nevertheless held that Honeywell's retention of the check proceeds after it became aware of Flambeau's claimed offset and the condition upon which the check had been tendered constituted an accord and satisfaction, and it granted an interlocutory judgment to Flambeau.

Honeywell contends that this court's decision on their previous appeal constituted the law of the case, and that the trial court was therefore required to hold that there had been no accord and satisfaction after it found that there was no prior dispute between the parties. Flambeau argues that its assertion of a claimed offset in the letter accompanying the check rendered Honeywell's claim disputed and unliquidated, and that its payment of an amount it concedes it owed to Honeywell and Honeywell's retention of the proceeds after Honeywell learned of Flambeau's claim constituted an accord and satisfaction. *See Holman Mfg. Co. v. Dapin*, 181 Wis. 97, 101, 193 N.W. 986, 987 (1923).

It is undisputed that Northern Trust, as agent for Honeywell, had no authority to cash a check marked as payment in full. There is no evidence that Northern Trust had any knowledge of a possible dispute between Flambeau and Honeywell that could be imputed to Honeywell, or that it was authorized to settle an account on Honeywell's behalf. There is also no evidence that Flambeau disputed the amount Honeywell quoted until it sent the check and letter in which it claimed an offset.

Even if Honeywell's retention of the check proceeds for its use after it learned of and disputed Flambeau's right to an offset constituted an accord and satisfaction under common law principles, we conclude that an accord and satisfaction was not effected because Honeywell reserved its right to full performance from Flambeau under sec. 401.207.[2] Section 401.207 is part of the Uniform Commercial Code, chs. 401–409. Because the controversy between Flambeau and Honeywell involves a commercial transaction for the sale of goods, that transaction is governed by the provisions of the code. Section 402.102, Stats. We are required to liberally construe the provisions of chapters 401–409 to promote their underlying purposes and policies. Section 401.102, Stats.

Section 401.207, Stats., provides:

Performance or acceptance under reservation of rights. A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.

---

[2] When the trial court granted the interlocutory judgment to Flambeau, it indicated that it construed our decision on the first appeal as supporting its prior holding that § 401.207, Stats., was not applicable to defeat Flambeau's defense of accord and satisfaction. In our decision, however, we simply declined to interpret § 401.207 at that time, and did not address the merits of the trial court's holding on this issue.

Wisconsin has not addressed the applicability of sec. 401.207 (U.C.C. § 1–207) to the cashing of a check marked "payment in full" whereby the creditor attempts to reserve his right to recover the balance of his claim not covered by the check. Some jurisdictions have either held or stated by way of dicta that U.C.C. § 1–207 allows a payee in a code-covered transaction to cash a conditional check, retain the proceeds, and avoid the operation of an accord and satisfaction if he explicitly reserves his right to full performance from the payor.[3] Other jurisdictions have reached the opposite conclusion.[4] At least one commentator on the Uniform Commercial Code has questioned the applicability of § 1–207 to the conditional check and has relied on the official comment to § 1–207, which states in part: "This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute . . . ." Because an accord and satisfaction involves a new contract, it is argued that this is inconsistent with a "performance along the lines contemplated by the contract."[5] *See* Hawkland, *The Effect of U.C.C. § 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check,* 74 Comm. L.J. 329, 331 (Nov. 1969).

[3] *See, e.g., Kroulee Corp. v. A. Klein & Co.,* 426 N.Y.S.2d 206 (1980); *Braun v. C.E.P.C. Distributors, Inc.,* 433 N.Y.S.2d 447 (N.Y. App. Div. 1980); *Baillie Lumber Co. v. Kincaid Carolina Corp.,* 167 S.E.2d 85 (N.C. Ct. App. 1969); *Kilander v. Blickle,* 571 P.2d 503 (Or. 1977); *Scholl v. Tallman,* 247 N.W.2d 490 (S.D. 1976).

[4] *See, e.g., Eder v. Yvette B. Gervey Interiors, Inc.,* 407 So. 2d 312 (Fla. App. 1981); *Fritz v. Marantette,* 273 N.W.2d 425 (Mich. 1978); *Jahn v. Burns,* 593 P.2d 828 (Wyo. 1979).

[5] A problem with this interpretation arises in the case of a full payment check that is tendered during an intermediate stage of performance. The language of the official comment to § 1–207 indicates that the statute would then apply. It makes little, if any, sense to apply § 1–207 to that situation but not to a conditional check tendered at the end of performance.

Others have recognized, however, that offering a reasonable payment in full satisfaction of an obligation inflicts "commercial torture" on the payee and have concluded that where the payee has explicitly reserved his rights, U.C.C. § 1–207 applies to the conditional check situation.[6] Although some have criticized this interpretation on the ground that it may discourage settlements and unfairly favor creditors, it is also recognized that the common law doctrine of accord and satisfaction often gives debtors an unfair advantage over creditors, and that § 1–207 may be an effort to balance the scales. *See id.* at 332.

The Wisconsin Legislative Council's report concerning sec. 401.207 supports a conclusion that the statute applies to the acceptance under protest of a conditional check tendered in a code-covered transaction. The annotation states in part: "Provides a method of procedure whereby one party claiming a right which the other party feels to be unwarranted can make certain that the fact that he proceeds with or promises or assents to performance will not operate as a waiver of his claim to such right . . . ." This conclusion is also bolstered by the 1961 Report of the Commission on Uniform State Laws,[7] which interpreted U.C.C. § 1–207 as follows: "The Code rule would permit, in Code-covered transactions, the acceptance of a part . . . payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the . . . payment."[8] It is clear that this interpretation deals with the situation of an offered compromise of a disputed or unliquidated claim and not a liquidated claim, since there never was

---

[6] *See* White and Summers, Uniform Commercial Code 544–47 (West. 2d ed. 1980).

[7] *See* Report of the Commission on Uniform State Laws to Legislature of State of New York 19–20 (1961).

[8] The New York state legislature subsequently incorporated this language in its comments to U.C.C. § 1–207 when it adopted that

a risk of losing the right to recover the balance of a liquidated claim by agreeing to accept partial payment. This same interpretation of sec. 401.207 is consistent with the underlying purposes of the Uniform Commercial Code set forth in sec. 401.102(2), Stats.[9] That it is also commercially reasonable is apparent in this case where Honeywell would otherwise be forced to return $95,412, which Flambeau concedes that it owes, in order to press its claim for $14,000 that it contends is still due under the contracts.

Flambeau argues that even if sec. 401.207 applies in this case, Honeywell failed to reserve its rights under the statute. We disagree. Although Honeywell retained the proceeds after the check was cashed, it sent a letter to Flambeau immediately after it learned of the check and accompanying letter in which Flambeau claimed an offset. In that letter, Honeywell responded to Flambeau's contention that Flambeau had paid off its obligations to Honeywell by stating, "this is not the case." The letter also indicated that Honeywell did not consider the check to be in full payment of the account. The wording was sufficient to put Flambeau on notice that Honeywell protested the amount of the check, and the letter was a proper and explicit reservation of rights within the purview of sec. 401.207. *See Kroulee Corp. v. A. Klein &*

provision. Other jurisdictions have looked to the commission's interpretation for guidance when construing § 1–207. *See, e.g., Scholl,* note 3, at 492.

[9] Section 401.102(2), Stats., provides:

Underlying purposes and policies of chs. 401 to 409 are:

(a) To simplify, clarify and modernize the law governing commercial transactions;

(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) To make uniform the law among the various jurisdictions.

*Co.,* 426 N.Y.S.2d 206 (1980) ; *Ayer v. Sky Club, Inc.,* 418 N.Y.S.2d 57, 58 (N.Y. App. Div. 1979). Although the usual method of reserving rights is for the payee to endorse the conditional check with words indicating protest, Northern Trust had already negotiated the check without authorization when Honeywell, the payee, learned of the transaction. A reservation of rights via letter was the only route available to Honeywell, which it immediately pursued. Honeywell therefore explicitly reserved its rights under sec. 401.207, and its retention of the check proceeds did not effect an accord and satisfaction.

Because the trial court held that an accord and satisfaction had occurred, it dismissed Honeywell's counterclaim. We therefore remand for a consideration of the merits of this counterclaim.

*By the Court.*—Order reversed and cause remanded.

FOLEY, P.J. (concurring). Honeywell's acceptance of Flambeau's check was not an accord and satisfaction. An accord and satisfaction is contractual in nature. *Karp v. Coolview of Wisconsin, Inc.,* 25 Wis. 2d 299, 303, 130 N.W.2d 790, 793 (1964). It requires consideration. *Kendall v. Sump,* 204 Wis. 514, 517, 235 N.W. 544, 545 (1931). The only possible consideration here was Flambeau's check. As neither party disputed the fact that at least this amount was presently due, the check is not consideration. *See id.*